## Philip Amsterdam, Appellee, v. City of Chicago et al., Appellants.

### Gen. No. 15,559.

NUISANCES—*power of court to remove.* If an injunction be prayed for to prevent a municipality from interfering with the use of grand stands located upon tops of buildings for the purpose of enabling ball games to be witnessed, the court may upon finding that such grand stands did not meet the requirements of the city ordinances and constitute nuisances, grant the relief prayed for by a cross-bill and order the removal thereof.

Bill in chancery. Appeal from the Circuit Court of Cook county; the Hon. OSCAR E. HEARD, Judge, presiding. Heard in this court at the March term, 1909. Reversed and remanded with instructions. Opinion filed March 16, 1911.

EDWARD J. BRUNDAGE, for appellants; WILLIAM S. STAHL, of counsel.

ADLER, LEDERER & SCHOENBRUN, for appellee.

MR. JUSTICE BROWN delivered the opinion of the court.

The appellee in this case, Philip Amsterdam, complainant and cross defendant below, is the owner of two three story brick flat buildings of ordinary construction, from the flat roofs of which people can overlook the West Side National Ball Park. One of them, at 451 South Wood street, had on the roof when he bought it "a grand stand," as the same is defined in section 656 of the Municipal Code of Chicago; that is tiers of wooden seats rising one above the other. Seats on these stands were presumably rented by the former owners, as they were by appellee in 1905 and 1906 and 1907, to persons desirous of seeing the base ball games in the park without paying therefor as much as was demanded for admission to the park for equally good seats. The other building is at 805 West Taylor

street, and was built by the appellee in 1907. On it he built a grand stand similar to that on the building at 451 South Wood street, but larger, and used it for the same purposes.

Permits to Amsterdam "to use roof" of 451 South Wood street as a "grand stand" were issued to him by a deputy commissioner of buildings for the city in the spring of 1905 and of 1906, and one for the "erection of a grand stand on the roof" of said building in April, 1907. The permits were on blank forms used for permits for the erection of buildings, and all contained the clause:

"This permit is granted on the express condition that the said P. Amsterdam in the erection of said building shall conform in all respects to the ordinances of the city of Chicago regulating the construction of buildings in the city limits, and may be revoked at any time upon the violation of any of the provisions of said ordinances."

A permit apparently was issued for the building at 805 West Taylor street, including a grand stand on the roof, on July 19, 1907. At all events the evidence shows that on that date plans for the building, showing the proposed grand stand on the roof, were approved by a deputy building commissioner, and the court below in its decree hereinafter described so found.

It is, however, not disputed that the permits for the erection or use of "grand stands" on both buildings were revoked in the fall of 1907, and notice given to the appellee by the city of Chicago through a deputy commissioner of buildings. This the court below also found in its decree, and counsel for appellee in their argument concede that no question is raised by the record as to the estoppel of the city because of the issuance of said permits.

But after that revocation the police made objection to people going upon these roofs, and the appellee Amsterdam thereupon filed a bill in chancery making

the city of Chicago, its chief of police and its commissioner of buildings defendants, setting forth his ownership of the buildings, the construction of the grand stands upon the roofs, and the profitable use by him for four years of the one on South Wood street. He alleged further by his bill that he had complied with all the regulations of the building department of the city and with all suggestions, additions and improvements required by the city for the purpose of rendering the roofs safe, and that they and the stands were safe; that the building department of Chicago, though admitting the fact that the stands and roofs were safe, were threatening to stop the use of the roofs on the ground that "the corporation counsel had ordered no permits to be issued for stands in the future near the base ball park;" that the police were interfering to prevent persons from going up on the roofs and threatening to arrest the complainant; and "that in the construction of said stands on the roofs and each of them" the complainant had strictly followed the laws and city ordinances. He therefore prayed the court to enjoin the defendants from in any manner interfering with his premises or with the use of the roofs of said premises for the purpose of placing and seating persons thereon.

A temporary injunction in accordance with the prayer of the bill was granted. The defendants then answered, denying that the buildings and constructions thereon were safe or that the grand stands were erected in accordance with the ordinances and regulations of the city of Chicago, and denying any admission to the contrary by said city or its officers. They denied also that the reason for the refusal for the permit for the building at 805 West Taylor street was that the corporation counsel had ordered that no permit be issued for stands in the future near base ball parks, and alleged that the true reason was that to issue such a permit would be in violation of certain

ordinances of the city of Chicago, and especially section 656 of the Revised Municipal Code of Chicago of 1905.

Said section 656 is set forth in full in the answer and as we think the decision of this case properly turns upon it, we quote it.

"Wooden grand stands or tiers of seats, commonly known and described as grand stands, may be erected within the fire limits where no part of any such structure shall be within sixty feet of any other building or structure, provided that the person or corporation desiring a permit for the construction of such a grand stand shall first obtain the consent in writing of the owners of a majority of the frontage on both sides of the street or streets on each side of the block or square in which it is desired to erect such grand stand."

With their answer the defendants filed a cross bill against Amsterdam, in which they allege that the two "grand stands" in question are unsafe, and continuing nuisances and menaces to the community, and that they were erected in violation of section 656 of the Municipal Code as there set forth. The bill sets out various ordinances of the city bearing on the subject of dangerous constructions and the power of officers of the city to compel their abatement, and prays that the "grand stands" erected upon the roofs of said premises at 451 South Wood street and 805 West Taylor street be declared in violation of law and the city ordinances, and that an order be entered on the defendant Amsterdam to remove the said grand stands from the roofs of his said buildings.

This cross bill Amsterdam answered formally, praying for strict proof of all its allegations.

The cause was heard before a chancellor in the Circuit Court, and much evidence taken concerning the actual condition of the constructions and their safety and the danger incurred by persons occupying them in case of fire in the building beneath; all which is

rendered immaterial by the view that we take of the case, and which we need not therefore discuss.

The court below entered a somewhat elaborate decree, which found in detail the construction of the "grand stands" on the two buildings and of the means of access to and egress from them, and then ordered that Amsterdam should not use said tiers of seats known as grand stands constructed on the roof of his building at 451 South Wood street until he had complied with "the ordinances of the city of Chicago for buildings known as tenement houses combined with roofs used for spectatorial purposes."

It may be noted in passing that we agree with counsel for appellee that no ordinances properly to be described "as ordinances for buildings known as tenement houses combined with roofs used for spectatorial purposes" are shown by this record to exist.

The decree further proceeded to order that Amsterdam should be permitted to use the grand stand erected upon the roof of the building known as 805 West Taylor street for spectatorial purposes when he should have made various changes and additions in construction on the roof and on the grand stand itself and in his building proper, and in the language of the decree "should have complied with the ordinances of the city of Chicago governing the use of tenement buildings combined with a roof used for spectatorial purposes under section 722 of the Revised Municipal Code of Chicago of 1905." The decree proceeds: "As soon as he shall have complied with said provisions, complainant in the bill shall be permitted to use said roof on said building at 805 West Taylor street, together with the grand stand erected thereon for spectatorial purposes for the viewing of said base ball games."

The defendants to the original bill and cross complainants appealed from this decree.

The reference of the decree to "the ordinances for buildings known as tenement houses combined with roofs used for spectatorial purposes," and the prac-

tical identification of such supposed ordinances with section 722 of the Revised Municipal Code of 1905, makes desirable the recital herein of that section, the relation of which to section 656, heretofore quoted, is the turning point of this case as we view it.

Section 722 is as follows:

"It shall be unlawful for any person, whether owner, lessee, manager or person in control or having charge of any building within the City to permit the use of the roof of any house or building, whether free of charge or through admission fee to any person, as a place of observation or for spectatorial purposes unless he has first obtained from the commissioner of buildings of the City a permit; Provided, however, it shall not be unlawful for any person, whether owner, lessee or the person in control or having charge of such house or building, to permit the roof of any such house or building to be used as a place of observation or for spectatorial purposes for a number of persons not exceeding ten and when no admission fee is charged."

Section 723, which is also alluded to in the findings of the decree, hereinafter to be mentioned as involved in this litigation, is as follows:

"Before issuing the permit as provided for in the foregoing section the Commissioner of Buildings shall make an investigation as to whether such building is safe and secure enough to permit the presence of an estimated number of persons to be permitted on such roof. The Commissioner of Buildings shall see to it that every such roof is surrounded and enclosed with a railing or balustrade of sufficient height and strength to afford adequate protection."

The court below in its decree included among its findings the following:

"The court doth further find that defendant to the bill and complainant to the cross bill introduced Section 656 Revised Municipal Code of Chicago of 1905, and doth find that said section 656 of said Revised Municipal Code of Chicago of 1905 is not applicable to this structure, to which findings defendants to the bill of complaint and complainants to the cross bill

excepted, and the court doth further find that com-
plainants to the bill and defendants to the cross bill
introduced sections 722 and 723 Revised Municipal
Code of Chicago, and the court doth find that said
sections 722 and 723 of said Revised Municipal Code
of Chicago of 1905 applied to said building and the
grand stand used on the roof thereof for spectatorial
purposes, to which finding defendants to the bill and
complainants to the cross bill excepted.''

We disagree with these findings, and it follows from
such disagreement that we think the court below erred
as well in the ordering part of its decree.

It is found by the court below in its decree, and the
finding is acquiesced in by appellee, that the grand
stands are within less than sixty feet of another build-
ing and are within the fire limits of the city, and that
the appellee did not obtain the consent in writing of
the owners of a majority of the frontage on both sides
of the street on each side of the block or square in
which said stands are respectively located.

It therefore is plain that if section 656 applies to
them both, the grand stands in question are in viola-
tion of the ordinance and the appellants should not be
enjoined under any condition from enforcing the ordi-
nance.

The basis of the argument of appellee and of the
finding of the court is the proposition that section
656 of the Code does not apply to grand stands erected
on the roofs of brick buildings, ''as it is,'' counsel
says, ''a portion of Article 17, which is specifically
designated as relating to frame buildings.'' The
stands in question, they say, are part of a brick build-
ing.

Again it is said that sections 722 and 723 ''relate
specifically *to stands on buildings,*'' and must control
the inconsistent provision in relation to such stands in
section 656 if that section should otherwise be held to
apply.

Both these propositions are fallacious.

Tiers of wooden seats rising one above the other are "grand stands" regulated by section 656 of the Code just as much when they are erected on the roof of a brick building as when they are erected on the ground. They are not in the former case "parts of a brick building." The position of the section in an article headed "Frame Buildings" has no bearing on the subject. Such stands are, however, in themselves "frame buildings," "frame constructions," and the ordinance about them is properly enough placed in a chapter thus entitled.

Nor is there any inconsistency between section 656 on the one hand and sections 722 and 723 on the other which calls for any reconciliation or which makes 722 and 723 applicable to the grand stands here involved. Those sections instead of "specifically relating" to stands on buildings, say nothing about stands on buildings. They apply to "the use of roofs as a place of observation," whether there are grand stands on them or not; but they leave the matter of erecting and maintaining grand stands on them where it is placed by section 656.

Our conclusion is, therefore, that this decree should be reversed and the cause remanded with instructions to the court below to dismiss the bill of the complainant, and inasmuch as the complainant chose the equity forum in which to assert his supposed rights and litigate the entire question, to grant the relief prayed by the appellants in their cross bill. Had their bill been an original one there might have been doubt of the jurisdiction of the court to make such a decree as is therein prayed for. The chancellor, however, in his decree made a finding which is not questioned, that the grand stand on the Wood street house was a continuing nuisance as then used, and that the grand stand on the Taylor street house needed changes to make it safe for the purposes for which it was used, which must be considered as tantamount to the same

114   APPELLATE COURTS OF ILLINOIS.

Marshall v. Canadian Cordage and Mfg. Co., 160 Ill. App. 114.

finding in relation to it. As the stands cannot be made legal or in compliance with the ordinances by any changes, we think the court should order their removal as continuing nuisances in accordance with the prayer of the cross bill.

*Reversed and remanded with instructions.*